Kirschenbaum v. ASSA I'll say good afternoon, your honors. It's Peter Livingston on behalf of ASSA Corp. and ASSA Limited. Once again, we're faced with a record that was put together based upon evidence that came out of a trial, which came out of prior appeals, which all preceded, for the most part, 1995, when, as this court well knows, Mr. Shikari and Ms. Agrameri assumed ownership of the property in question. As this court found in an earlier case involving a lobby, it respectfully suggests that this court, or the district court I should say, lacked jurisdiction as it pertained to any of the findings under the FSIA. ASSA Corp. is a New York corporation. ASSA Co. Limited is formed as a corporation in the Bailiwick of Jersey in the Channel Islands. It does not have a permanent population. It does not have a government or any other indicia to suggest that it is a government in any way, shape, or form. By virtue of that, it's not a foreign state. If we go further into it, by virtue of the fact that they have incorporations in New York and a third party, they can't be considered under FSIA. One possibility is they could be considered as an alter ego under FSIA if the Banksy case were to be followed. The problem with that is that the district court never bothered to make the five-point analysis under Banksy, so it's not before this court. That turns us to one other aspect of it, which was touched upon in an earlier argument, and that is how does this play out with respect to TRIA. Now under TRIA, the first element is whether or not there's a terrorist party. No one has asserted that ASSA Corp. or ASSA Co. Limited is a terrorist party. Then we get to the next level, and that is whether ASSA Corp. or ASSA Co. Limited is an agency or an instrumentality of a terrorist party. There again, we have to look at the specific facts as to what was developed or not developed before the district court. The court makes reference to concealment, but the problem with that is that there has not been any concealment. No government was lied to, no agency was lied to, no individual was lied to. The district court got mixed up, and she mentions that we lost our assets because of the Gabay case or the Flat Out case. The only problem with that is that we were not parties in that litigation. She kind of made up the facts as she went along. The government has not traced one dollar of rental income to Iran. The money from the rental income of ASSA Corp. went back to its parent in the Jersey Islands to repay it for the loan that was utilized to buy that property in 1989 when it was perfectly legal to own that property in New York. There's no concealment. No documents were found with respect to that aspect of it at all. Didn't our prior decision hold as a matter of law that bank mailing continued to control ASSA after 1999? I've seen dicta in that file, but they're not based on anything we said, not even our documents. Including the payment of 100 pounds of consideration for what was obviously worth a lot more? That's a par value, which is not an unusual practice in Europe when you fill out forms for the financial to indicate what the par value was of the shares. But with respect to concealment, there's no evidence with respect to that. With respect to day-to-day operations, my clients took over in 1995. 14 years, and there's no evidence of day-to-day operations conducted by anyone. Even when counsel made reference to a document, I think it was that Mr. Jahidi had torn up or something, what's very interesting is that that document was a letter by ASSA Limited to its charted accountants talking about the fact that they were selling their interest not to a lobby, but to a third party. Why was he tearing up evidence? I have no idea. Why was it a subpoena? I have no idea. You'd have to ask a lobby. I don't know. I mean, even paranoid people have enemies. I can't answer that question for you. Basically, what the court allowed to happen here is let the OFAC usurp her responsibilities and not provide us with an opportunity of discovery, because as an agency or instrumentality under TRIA, there are two components. One has to be material services. Two has to be a blocked asset. Well, we have to get behind the blocking aspect of it, as I suggested earlier, and with respect to the government's case, by giving us a fair opportunity to see what the basis was for blocking. Without that, basically, all we have is the Judgment of Candidates had a press release. And I don't think that, because they don't know what the blocking aspects of it, they could never come to this court and assert why it was that ASSA's assets were blocked. All they have is a press release. So for that basis, we're going to turn over almost $500 million in assets? I don't think so. I think this case has to go back. The court did not have jurisdiction on the FSIA, and we have to go back to get the requisite discovery that we need from OFAC. By doing that, we'll have that fair opportunity to go forward with the case. As I suggested before, we didn't get that fair opportunity. She struck the Shikari Declaration, which would set forth facts to refute what the private creditors had to say. There's no concealment. In fact, these individuals in their declaration indicate there weren't public employees. They had none of the requisite connections to a bank building or Iran under the circumstances. By reason of that, we're asking you to reverse, send it back, and confine us with the Kirshenbaum case, which Judge Wesley wrote, as it pertains to how the district court went about their business. Thank you. Thank you. Good afternoon. May it please the Court. Patrick Petruscelli on behalf of the judgment creditors. I have a couple of quick points I want to make. First, the notion that the Court's holdings in 650 and Kirshenbaum as to Bank Mellie's continued control of ASA post-1995, the suggestion that those holdings were dicta is just simply not true. A lobby argued on the prior appeal that the alleged sale to Shikari and Agamiri in 1995 was a true sale and that a result of that meant that Bank Mellie no longer owned ASA post-1995. And so that was an issue that was specifically before the Court, and the Court resolved that issue as a matter of law. From a pure perspective of stare decisis, that holding is binding on ASA to the extent that they are unable to distinguish their case now from the cases that was before this Court then, and they have simply failed to do so. I want to make a point as to the lack of discovery from Oak. ASA didn't participate in. Correct. ASA did not participate, and so that holding doesn't bind ASA. I'm not arguing res judicata or anything like that. I'm not arguing res judicata or law of the case. It doesn't bind ASA the way it binds a lobby, but it certainly — Analysis would be the same. Correct. The facts are exactly the same, and the outcome should be exactly the same based on a pure issue of stare decisis. There is no distinguishing factor between 650 and Kirshenbaum and the case that is currently pending before this panel. On the issue of blocking, Mr. Tracer referenced the fact that the government civil forfeiture case was not a situation where a lobby — I'm sorry, ASA had the opportunity to challenge the fact of the blocking. And here, there is simply no question that ASA's property was blocked by OFAC under Executive Order 13382. That's at 73 Fed Reg 80513. And when you're dealing with an executive order like 13382 that requires an affirmative designation by OFAC, the fact that that designation has been made is conclusive evidence that the property is blocked. Now, it would have been possible for ASA to challenge that designation in an administrative proceeding in OFAC, but they needed to follow the administrative guidelines that would allow them to do that. That is at 31 CFR Section 544.801 incorporates by reference another provision of the regulations, 31 CFR 501.807, and those lay out the administrative procedures that ASA would need to have taken to get its designation removed. They never did that. And because they didn't, for purposes of our TRIA proceeding, there is simply no question of fact, law, or anything that their property was blocked. What they could have done in order to defend themselves against the TRIA proceeding was show that they didn't meet the standard of being found to be a terrorist party or an agency or instrumentality of a terrorist party. But under Kirshenbaum, we know that the standard is whether they were owned or controlled by ASA. And again, this Court's decision answered that question as a matter of law. And so, you know, regardless of whether or not we think that there should be additional discovery as to a statute of limitations ground, which we take no position on, that simply would not provide any additional relief for ASA for purposes of the TRIA claim. The TRIA claim can be completely decided based solely on this Court's prior holding that ASA is owned or controlled by Bank Mellie, and they've offered no reason why the Court should depart from that holding. With respect to the Shaqiri Declaration, of course it was hearsay once the District Court decided to strike the Declaration because Shaqiri wouldn't have been able to come and testify as to the matters set forth in the Declaration. But that really, for our purposes, doesn't matter because the District Court considered the Shaqiri Declaration on a prior motion and found that it did not raise a tribal issue of fact, and this Court in Kirshenbaum considered the factual bases set forth in the Shaqiri Declaration and concluded the same thing. So regardless of whether the Shaqiri Declaration should have been stricken or shouldn't have been or should have been considered, the District Court considered it, this Court considered the same facts, and both the District Court and this Court concluded as a matter of law that it did not raise a tribal issue of fact on the question of control. And then just very briefly, the last point that I want to make, there was some suggestion, and it wasn't entirely clear to me that the District Court lacked jurisdiction. The District Court certainly had jurisdiction under TRIA. And finally, I just want to point out with respect to bank check, we set forth why we think the control aspect of bank check is met in our briefs. Separately, we also argued, as the Court is aware, there are two prongs to bank check. There's a control prong and there's a fraud or injustice prong. We also set forth in our brief why we thought the fraud or injustice prong is satisfied. Again, all of that flows from the Court's prior matter of law determination that ASSA is owned by Bank Mellie, and so we think that that does offer additional grounds that the Court can affirm the judgment as to ASSA with respect to TRIA, 1610A7, and 1610B3. Unless there are any questions from the panel, I'll otherwise rely on our papers. Thank you. Thank you very much. We'll hear the rebuttal. Very simply, with respect to what was before this Court, what was not before this Court was the Jacare declaration, which was stricken by the District Court. So the Court did not have the opportunity to weigh that, nor the opportunity to see or hear the testimony of Mr. Jacare, which the Court was advised he was coming with Mr. Tofte to New York in order to prevent that from happening five days later after saying we should get together with the government to arrange for that. Counsel argues that the Jacare declaration doesn't create an issue of fact anyway. How do you respond? How could it not create an issue of fact? It indicates the fact that they purchased this property, that they're independent of Iran, that they are not public employees. It was pretty comprehensive as for purposes of this motion, but counsel also suggests that we should have gone through an administrative agency or administrative proceeding with OFAC when, in fact, OFAC ignored three separate FOIA requests and acted the same way in our case as they did in Kinehart's. Then when we ultimately thought we'd get some support from our court, the District Court, we didn't. We got blacked out pages and an admonition if we show up at a deposition to ask questions with respect to when, how, where, why, don't bother coming. So we did not have that opportunity. Do you think there's something there that's helpful to you? Yes, I do. What might be there that's helpful? I think there's a huge separation between when our clients bought in 1995 and anything that happened before. I can certainly see where whatever happened before would color the judgment of any investigators in terms of whether there was an ongoing conspiracy or concealment or whatever it might be. But we came into the picture in 1995, and virtually all the documents that were presented in this case and all the contact with Iranian officials and everything else involved a lobby, and it all took place before 1995. So, yes, I definitely think that there's sufficient material there, and also with respect to the statute of limitations as to when did they dig into this matter and when did they start. Those are basic questions that we certainly have a right to know. Thank you. Thank you. A well-reserved decision.